No. 90-538

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

JUL - 2 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF T.A.,

Youth in Need of Care,

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Marcey Femling Schwarz; Schwarz Law Firm, Billings,
        Montana
        James Graves; Oliver & Graves, Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Jennifer Anders, Assistant Attorney General, Helena,
        Montana
        Dennis Paxinos, Yellowstone County Attorney,
        Billings, Montana; David Hoefer, Deputy County
        Attorney, Billings, Montana
        Damon Gannett, Gannett & Ventrell, Billings, Montana

Submitted on Briefs: May 16, 1991

Decided: July 2, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Thirteenth Judicial District, in and for the County of Yellowstone, Montana, the Hon. G. Todd Baugh, presiding. The natural parents of T.A. appeal from an order issued by the District Court, Yellowstone County, declaring T.A. a youth in need of care and granting temporary custody to the Department of Family Services until T.A. reaches the age of eighteen.

Appellants present the following issues:

1. Did the District Court abuse its discretion by failing to dismiss, on the basis of insufficient evidence, the petition of the Department of Family Services for temporary custody of T.A.?

2. When awarding temporary custody of a child to the Department of Family Services until the child reaches eighteen, must the State prove by clear and convincing evidence, that the child has been abused or neglected?

Due to neglect and abuse by her mother, T.A. has been a dependent child in the custody of the Department of Family Services (DFS) since 1987 when she was eight years of age. At the time of the proceedings in question, T.A. was eleven years old. T.A.'s father had not paid child support and had not attempted to contact T.A. up to the time of the hearing in this matter, January 10, 1990.

In May, 1987, through the Yellowstone County Attorney's Office, DFS petitioned the District Court for an order granting DFS temporary investigative authority over T.A. and two of her half-

2

brothers, a fifteen-year old and a baby of seven months. All three children had different fathers, and the identify of T.A.'s father was unknown at the time of the 1987 hearing. The 1987 report to the court filed by DFS in support of its petition contained nearly two dozen referrals relating to the three children over a ten-year period.

The earliest referrals to DFS involving T.A. were in 1980 when T.A. was two years old. Child Protective Services received a report that the mother had taken T.A. to a bar while she played pool and that T.A. had a bruise on her cheek and a black eye. On another occasion, the mother became so drunk that she was unable to care for T.A., and the bar management called police to investigate the matter.

The report to the court in support of the 1987 petition for temporary care refers to numerous incidents of neglect, the mother's drug abuse, sale of drugs by the mother, and evidence of prostitution by the mother in the home. One report received from a tenant who had rented a basement to the mother stated that the mother used crank, did not feed her children regularly, and fought constantly with the man living with her. A report based on statements of T.A.'s older half-brother to a social worker states in part:

> [The mother] takes and sells drugs out of the home. There are numerous people coming in late at night to buy drugs. Mom shoots up drugs and is awake for 1 1/2 to 2 days prowling around the house keeping everyone up. Then she sleeps for 2 days. He said his mother walks around the house naked or dressed only in a see-through nightgown.

3

Among the reports was an alleged "spanking" given T.A. by both the mother and the youngest child's father in 1987 which resulted in "massive bruising on her right buttock and left buttock and down her right thigh." These injuries were documented at Billings Deaconess Hospital and resulted in T.A.'s immediate placement in emergency foster care.

The record indicates at least four temporary placements over a period of some three years for T.A. With approval from DFS, from December 1987 to June 1988, T.A. lived with her maternal grandmother in North Dakota. Although T.A. adjusted well in North Dakota, she was returned to Billings. T.A. was again placed in foster care, and DFS was granted a motion for a six-month extension of temporary custody in July 1988.

In September 1988 the mother moved to Broadus, Montana, with a new boyfriend, and T.A. was allowed to return to her mother's care on a trial basis. T.A. did well in school in Broadus, but the mother's relationship with her new boyfriend disintegrated, and in December 1988 T.A. was returned to foster care while her mother attempted to stabilize her environment. T.A. remained in foster care after DFS was granted six month extensions of temporary custody of T.A. in February 1989 and in June 1989.

A treatment plan devised in June 1989 provided that T.A. could be returned to her mother's care on a trial basis in August 1989 if the mother complied with the terms of the plan. The conditions were not met, and in November 1989, DFS petitioned the court for an order continuing temporary custody of T.A. until she reached age

4

eighteen.

On January 10, 1990, a hearing on the petition was held and several medical people testified including Dr. Agosto, a licenced clinical psychologist who had examined T.A. on numerous occasions. He testified that T.A. showed stress reactions caused by her mother and that T.A. needed "quite a bit of help" in the area of stability and security. He further stated that in his opinion the mother was unable to provide stability and structure for T.A. at the present time.

Jerri Tate, a social worker for DFS who had been involved with the case since its inception, testified that the mother had six living arrangements in a period of six years. At the time of the hearings the mother had plans to move again. Ms. Tate testified that the mother would not participate in counseling and refused to take her lithium for her recently diagnosed manic-depressive disorder, or bipolar illness. The mother failed to complete the recommended re-evaluations by Dr. Yaney, the mental health professional who first diagnosed her bipolar illness.

Over the course of her involvement with T.A., Ms. Tate testified that T.A. had shown positive improvement, but she had not seen similar improvement in the mother. Ms. Tate recommended continued contact between mother and daughter, although she advised the court to continue temporary custody of the child with DFS because of the mother's instability.

The District Court, which had presided at all of the prior hearings involving DFS custody of T.A., awarded temporary custody

of T.A. to DFS until she reached age eighteen.

I

The first issue is whether sufficient evidence supports the District Court's decision that T.A. was a youth in need of care and ordering that she be placed in the temporary custody of DFS. More than sufficient evidence supported the decision. Nearly every page of the record presented to the court and the court's own knowledge of the case over many years are indicative of a badly abused child in need of care.

Section 41-3-101, MCA, sets forth the policy of the State of Montana regarding the youths of this state. All youth should be afforded "an adequate physical and emotional environment to promote normal development," if possible, in the environment of a child's own family. When a healthy family environment is not possible and when the rights of a child to an adequate physical and emotional environment are trampled by acts or omissions on the part of the child's natural parents, then the rights of the youth must be paramount over the desires of parents. See In re Gore (1977), 174 Mont. 321, 328, 570 P.2d 1110, 1114.

The District Court had to find that the child was abused, neglected, or dependent before awarding temporary custody of T.A. to DFS. Section 41-3-406, MCA. In awarding temporary custody, the ruling of the District Court is presumed correct and cannot be reversed by this Court unless there is (1) a mistake of law, or (2) lack of substantial, credible evidence to support the findings amounting to an abuse of discretion. Matter of S.P. (1990), 241

6

Mont. 190, 194, 786 P.2d 642, 644; Matter of R.T.L.P. (1989), 238 Mont. 384, 387, 777 P.2d 892, 894.

The natural parents claim that the court's finding was a clear abuse of discretion because of the testimony of Dr. Ralph Yaney, a Billings psychiatrist, and Dr. Richard Agosto, a clinical psychologist.

Dr. Yaney made the statement that he "would prefer to see the child back with the mother and with the Family Services observing her from that point of view." Dr. Yaney's contact with the mother consisted of four appointments, the last on January 12, 1989, and a twenty-minute talk with the mother immediately before the hearing on January 10, 1990. Dr. Yaney based his recommendation on the fact that the mother, at the time of the hearing, did not have strong indications of continued bipolar illness. Dr. Yaney conceded that he did not have enough information to "make a solid statement." In addition, Dr. Yaney admitted that he had not had access to the mother's history, could not make a personality diagnosis, had no knowledge of the mother's abilities to parent T.A., and was not familiar with the extent of the mother's abuse of alcohol and drugs.

Dr. Agosto testified that, although a reunification of T.A. and her mother at a future time was possible, at this time T.A. needed the stability of being in the same school with the same social group and required the assistance and care she was receiving from her foster family. Dr. Agosto advised that the mother would have to have counseling to "work on some of her own personal

7

responsibility and involvement in improving her own situation and her situation with her children" before reunification with T.A. would be feasible.

Both Dr. Agosto and Dr. Yaney testified in favor of continued supervision of T.A. by DFS. Although Dr. Yaney said that he thought the child should be placed with her mother, he admitted that his recommendation was not based on all of the facts concerning the history of the mother. The natural parents failed to show any abuse of discretion on the part of the District Court. Rather, the record shows years of abuse by the mother and a complete absence of involvement with the child by the father. The findings and conclusions of the District Court show thoughtful consideration of not only constitutional authority, but statutory directives and judicial precedent. The record contains substantial credible evidence to support the decision of the District Court. See Matter of R.T.L.P., 238 Mont. at 389-90, 777 P.2d at 895.

Living under these circumstances, T.A. and her brothers are part of "a generation of lost children." In T.A.'s case the hopeful indication in the record is that she has been placed in a loving home and that her efforts in school are improving. There is hope for T.A.

II

The second issue is whether the standard of proof imposed on the State should be clear and convincing evidence when awarding temporary custody with DFS until the child reaches age eighteen.

The parents assert that the proper standard of proof for

8

temporary custody with DFS until the child reaches age eighteen should be the clear and convincing standard required for termination of parental rights. In Matter of J.L.B. we concluded that in a case involving termination of parental rights, "the higher standard represented by the 'clear and convincing' test more adequately furthers the policy of family unity and more nearly approximates the previous approach of this Court than does the 'preponderance of the evidence' test." In the Matter of J.L.B. (1979), 182 Mont. 100, 117, 594 P.2d 1127, 1137. The parents argue that the same standard of proof required of the State should be adopted when temporary custody is granted to DFS until the child reaches age eighteen, since "T.A. has, in effect, been taken away from her mother until adulthood."

We examined the differences between termination of parental rights and grant of custody until the child reaches age eighteen in Matter of R.T.L.P., where we held that the same statutory criteria should not be required for "long-term custody until age eighteen" as for termination of parental rights. Matter of R.T.L.P., 238 Mont. at 390-92, 777 P.2d at 895-97. When custody of the child until age eighteen is awarded to a party other than the natural parent, continued contact with the parent may be allowed, and the parent has a right at some point in the future to petition the court for less restricted visitation or for physical custody of the child. The award of temporary custody until age eighteen gives the child stability and prevents repeated litigation over custody. Matter of R.T.L.P., 238 Mont. at 391, 777 P.2d at

896.

Since an order of temporary custody under § 41-3-406, MCA, does not unalterably deprive parents of their right to raise the child, we conclude that the higher burden of clear and convincing evidence need not be met for a district court to order temporary custody of the child with DFS until age eighteen. When the evidence demonstrates that a child is a "youth in need of care" who is "abused, neglected, or dependent" under § 41-3-404, a district court may order that the child be placed in the temporary legal custody of DFS until the child reaches majority if the court determines that such custody is in the child's best interest. Matter of R.T.L.P., 238 Mont. at 389-90, 777 P.2d at 895.

The arrangement ordered by the court gives T.A. a chance for stability and consistency in her life and will also allow for the possibility of future contact between both natural parents and T.A. The court determined that T.A. was a youth in need of care, and that the arrangement that DFS made for the care of this child was in her best interest. Under these circumstances, the District Court possessed all the authority and requisite discretion to enter the order that is the subject of this appeal. We hold that the District Court did not abuse its discretion by awarding temporary custody of T.A. to the Department of Family Services.

The decision of the District Court is affirmed.

John Conway Harrison
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11