No. 96-316

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997




IN THE MATTER OF

C.M., F.M., and S.M.,

Youths in Need of Care.




APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.




COUNSEL OF RECORD:

For Appellant:

James B. Obie, Helena, Montana (Appellant); Randi M.
Hood, Public Defender's Office, Helena, Montana
(guardian ad litem)

For Respondent:

Joseph P. Mazurek, Attorney General, John Paulson,
Assistant Attorney General, Helena, Montana; Mike
McGrath, Lewis and Clark County Attorney, Carolyn
Clemens, Deputy County Attorney, Helena, Montana




Submitted on Briefs: January 16, 1997

Decided: February 20, 1997
Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.


Appellant Wanda M. (Wanda) appeals the decision of the First Judicial District Court, Lewis and Clark County, granting permanent custody of C.M., F.M., and S.M. to the Montana Department of Public Health and Human Services (the Department) until each child reaches the age of eighteen. We affirm.

The sole issue presented on appeal is whether the District Court abused its discretion by granting the Department permanent custody of C.M., F.M., and S.M.

Wanda is the natural mother of three boys, C.M., F.M. and S.M. The boysþ father is not a party to this action. At the time of this appeal, C.M. was twelve, F.M. was eleven, and S.M. was seven.

The Department has been involved with Wanda and her family since 1988. In 1993, the boys were determined to be youths in need of care, and Wanda was ordered to complete a given treatment plan to improve her care of her sons. In 1994, the Department ended its involvement with the children because Wanda had substantially complied with the treatment plan.

In 1995, the Department again became involved, removing the boys from their motherþs home due to substantiated instances of abuse. By stipulation, the boys were again determined to be youths in need of care. The boys were placed and remain in separate foster homes.

Wanda was diagnosed with borderline personality disorder which manifests itself through intense, chronic anger and depression. She is more likely to become "destabilized" and fly into a rage when she is exposed to stressful situations. In addition, Wanda experiences problems with establishing an identity separate from her children; with forming and maintaining proper attachments to others, including her children; and with cultivating healthy relationships.

Wandaþs youngest son, S.M., is doing well in foster care. He performs satisfactorily in school and has not manifested any problems necessitating therapy. Wandaþs older boys, however, are both profoundly emotionally disturbed. The oldest boy, C.M., acts out in uncontrollable rage and frustration. He has threatened to kill himself and to kill others. He failed to improve in foster care and ultimately was placed in Shodair Hospital. After initial improvement, C.M. attempted to return to a public school, but he quickly regressed and was placed back in Shodair.

The middle boy, F.M., also suffers from continuing emotional problems. While he also experiences occasional bouts of uncontrollable rage, he more generally manifests extreme anxiety. Therapists attribute this, at least in part, to his having been the family "scapegoat" prior to his removal from Wandaþs home. While in the home, he experienced physical and verbal abuse from both Wanda and his older brother. F.M. remains in a special classroom for emotionally "high-risk" children and, while his progress has been satisfactory, he has been unable to return to main-stream schooling. F.M. also exhibited compulsive behavior, such as obsessive cleaning, but these symptoms have abated since his transfer to foster care.

During the Departmentþs involvement with Wanda, and with the former goal of reuniting the family, it provided her with numerous services, including parenting classes, anger-management classes, individualized therapy, family therapy, family-based services and day care. While those who have worked with Wanda reported that she was improving in several areas, such as anger management, her progress overall was uneven and unpredictable.

Her supervised interactions with her children were also unpredictable; sometimes the time spent together seemed productive, but at other times Wandaþs interaction with her sons was inappropriate. At one therapy session with C.M., Wanda lost her temper and tore off a necklace C.M. had made and given her, informing him that she was giving up her parental rights to him. On another occasion, Wanda became enraged while on an outing with the boys and a Department social worker, declaring that the children didnþt love her and that the social worker should just return them to their foster homes. Following this incident, which reduced the boys to tears, the social worker instituted stricter ground-rules for Wandaþs visitation with the boys. Wanda angrily broke off communications with the social worker, and several months passed before communication was reestablished and she again visited with the children. These and similar incidents, which would be difficult for any child, were especially damaging to her emotionally fragile older boys.

The Department began to believe that the boysþ problems were being exacerbated by the uncertainty of whether or not they would be returned to Wanda, and by its own inability to provide them with long-term stable placement without a transfer of custody. This problem was compounded by Wandaþs insistence on telling the boys they soon would be "coming home" even though the Department instructed her verbally and in writing to desist from making such statements. Given these concerns, and in light of Wandaþs continuing profound personal and parenting difficulties, the Department petitioned the District Court for permanent custody of all three boys. After a hearing on the matter, the District Court granted the petition. Wanda appeals.

This Court will review the findings of a trial court sitting without a jury to determine whether the findings are clearly erroneous. In the Matter of D.H. and F.H. (1994), 264 Mont. 521, 524, 872 P.2d 803, 805 (citing Interstate Production Credit Assn. v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We will review the district courtþs conclusions of law to ensure they are correct. Matter of D.H., 872 P.2d at 805 (citing In re Marriage of Burris (1993), 258 Mont. 265, 269, 852 P.2d 616, 618). The transfer of a childþs custody from his or her parents to the Department is dependent upon an initial determination that the child in question is abused or neglected. Further, the determination that a transfer of custody is appropriate is a discretionary ruling. This Court will review the discretionary ruling regarding custody for an abuse of discretion, just as we review the determination that the child is abused or neglected for an abuse of discretion. Matter of D.H., 872 P.2d at 806.

If a child is determined to be a youth in need of care, the district court is authorized by statute to take appropriate measures to safeguard the welfare of the child. Section 41-3-406, MCA. Under this statute, the district court may transfer legal custody of the child from the parent or parents to the Department. Section 41-3-406(1)(c)(i), MCA. See also In the Matter of T.A. (1991), 249 Mont. 186, 190, 814 P.2d 994, 998.

When determining custody, the district court is bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children. In the Matter of J.J.C.H. and C.M.H. (1992), 252 Mont. 158, 165, 827 P.2d 812, 816. The best interests of the children are paramount and must take precedence over parental rights. Matter of J.J.C.H., 827 P.2d at 816 (citations omitted).

In this case, the parties stipulated to the fact that the boys were youths in need of care. Given this stipulation, it was within the District Courtþs discretion to transfer permanent custody of the children to the Department pursuant to 41-3-406, MCA. Wanda does not argue that the District Court lacked the authority to act as it did. Rather, she argues that the transfer of permanent custody to the Department was an abuse of discretion because the evidence presented did not demonstrate that such a transfer was necessary.

Wanda emphasizes the testimony of several witnesses who testified that she was making progress in her attempt to become a better parent. She notes that she has completed anger-management classes and continues to attend personal therapy sessions. In addition, Wanda presented testimony from an acquaintance who had observed Wanda with the children. This witness felt that Wanda loved the boys very much and was parenting them appropriately. In light of such testimony, Wanda argues that the District Court erred in removing the boys from her custody.

The Department does not argue that Wanda has not made any progress in her attempts to deal with her personal and parenting problems. Rather, the Department argues that her progress has been sporadic and insufficient to justify the continuation of the status-quo, which is a history of long-term, intensive, nearly constant state assistance. The testimony presented by numerous social workers indicated that Wandaþs parenting abilities are unlikely to reach a satisfactory level in a reasonable time. In addition, virtually every social worker who testified expressed great concern for the welfare of the boys, who need long-term therapeutic care of the sort which Wanda simply cannot provide and apparently will not be able to provide in the foreseeable future.

After hearing extensive testimony from a number of individuals who have attempted to assist Wanda with her parenting difficulties over the years, the District Court found:

Wanda has been unable and unwilling to remedy the circumstances which place her children at risk for abuse and/or neglect. Based on Wandaþs lack of motivation to do what is necessary to become an adequate parent and her history of involvement with [the Department], which has brought no appreciable improvement, the Court finds that awarding custody rights of these children to [the Department] until they reach the age of 18 is in the best interests of the children. Her long history of involvement with [the Department], the great number of services that have been provided to her, and her lack of progress indicate that change will not occur in the foreseeable future.

This Court has thoroughly reviewed the record in this case, and we determine that the District Court did not abuse its discretion in transferring permanent custody of the boys to the Department. The order of the District Court is, therefore, affirmed.


/S/ WILLIAM E. HUNT, SR.



We Concur:

/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER