No. 00-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 86

IN THE MATTER OF DECLARING

J.W. and K.D. Youths in Need of Care.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Derek Pomeroy, Attorney at Law, Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: September 21, 2000
Decided: May 15, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 L.D. appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, on its findings of fact, conclusions of law and order terminating her parental rights to J.W. and K.D. We affirm.

¶2 The issue on appeal is whether the District Court abused its discretion in terminating L. D.'s parental rights.

## BACKGROUND

¶3 On April 10, 1999, L.D. and her boyfriend, T.E., were arrested in their home for possession of dangerous drugs and drug paraphernalia. At that time, the Montana Department of Public Health and Human Services (DPHHS) placed L.D.'s children, J.W. and K.D., in emergency foster care. DPHHS then petitioned for--and the District Court granted--temporary investigative authority (TIA) and protective services for the two children. On May 12, 1999, DPHHS petitioned the court for temporary legal custody of J. W. and K.D. After a hearing, the District Court concluded that J.W. and K.D. were youths in need of care, granted temporary legal custody of the children to DPHHS and approved a treatment plan for L.D.

¶4 On August 16, 1999, DPHHS requested the District Court to extend its temporary legal custody an additional 180 days. The petition stated that, although L.D. had made significant progress toward successfully completing her treatment plan, her psychological evaluation indicated that additional time was needed to effectively address her substance abuse problems and establish a longer period of sobriety in order to ensure the safety of J. W. and K.D. while in her custody. The District Court granted the petition on August 17, 1999, and the parties entered a second treatment plan for L.D.

¶5 L.D. disappeared immediately thereafter. She apparently went into hiding after learning of a federal warrant for her arrest on drug-related charges. L.D.'s whereabouts were unknown for approximately 5 weeks. She eventually surrendered to federal authorities and was incarcerated in the Lewis and Clark County Detention Center from September 29, 1999, to January 26, 2000.

¶6 On February 15, 2000, DPHHS petitioned the District Court to terminate L.D.'s

parental rights to J.W. and K.D. Following a hearing on the petition, the court entered findings of fact, conclusions of law and an order terminating L.D.'s parental rights. L.D. appeals.

## STANDARD OF REVIEW

¶7 A district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion. In re Custody of C.F., 2001 MT 19, ¶ 11, 304 Mont. 134, ¶ 11, 18 P.3d 1014, ¶ 11 (citation omitted). However, a parent's right to the care and custody of a child is a fundamental liberty interest. In re J.A. B., 1999 MT 173, ¶ 14, 295 Mont. 227, ¶ 14, 983 P.2d 387, ¶ 14. As a result, when determining whether to terminate parental rights, a district court must make specific factual findings in accordance with the requirements set forth in § 41-3-609, MCA. Custody of C.F., ¶¶ 11-12. We review those findings of fact to determine whether they are clearly erroneous. Custody of C.F., ¶ 11. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake. Custody of C.F., ¶ 11. The party seeking to terminate parental rights must demonstrate by clear and convincing evidence that the statutory requirements for termination have been established. In re J.A.B., ¶ 14.

¶8 Finally, "the district court is bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children." Matter of C.M. (1997), 281 Mont. 183, 187, 932 P.2d 1063, 1066. Consequently, the best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights. Matter of C.M., 281 Mont. at 187, 932 P.2d at 1066.

## DISCUSSION

¶9 Did the District Court abuse its discretion in terminating L.D.'s parental rights?

¶10 A district court may terminate a person's parental rights to a child if it finds that the child has been adjudicated a youth in need of care, an appropriate court-approved treatment plan has not been complied with or has been unsuccessful, and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable period of time. Section 41-3-609(1)(f), MCA. The District Court found that these three statutory conditions had been established and terminated L.D.'s parental rights on that basis. L.D.

does not challenge the court's finding that J.W. and K.D. had been adjudicated youths in need of care. She argues, however, that its findings that she substantially failed to complete her second treatment plan and the conduct or condition rendering her unfit to parent is unlikely to change within a reasonable time are clearly erroneous. We address each contention in turn.

## A. Failure to complete treatment plan

¶11 On August 17, 1999, the District Court approved a second treatment plan for L.D. designed to evaluate and address her chemical dependency issues and ensure that she could maintain a safe home environment for her children. The treatment plan contained four goals for L.D. to achieve within six months, with a variety of tasks to complete toward each goal. John Clymer (Clymer), a DPHHS social worker, testified regarding L.D.'s progress in her second treatment plan.

¶12 The first goal in L.D.'s second treatment plan entailed addressing and monitoring her chemical dependency issues. The tasks L.D. was to complete toward this goal included following all recommendations made by the Alcohol and Drug Services of Gallatin County (ADSGC), attending group and individual counseling sessions, attending alcoholics and narcotics anonymous meetings, abstaining from drug use, not associating with known drug users and complying with DPHHS requests for random urinalysis testing for drugs and alcohol. Clymer testified that, although L.D. completed intensive outpatient drug treatment, she failed to attend her group and individual therapy counseling through ADSGC and was not available for random drug testing from August 18, 1999 through January of 2000 because she had disappeared and then was in jail. Furthermore, ADSGC had recommended she receive inpatient treatment for drug abuse, which L.D. did not do. Clymer also testified that L.D. admitted she had contact with her boyfriend, T.E., a known drug user, during the period of the treatment plan. Clymer opined that L.D. had not successfully completed the first goal of her treatment plan.

¶13 The second goal of L.D.'s treatment plan required her to address her parenting ability, emotional functioning and cognitive functioning. The tasks under this goal included following the recommendations made by Dr. Ned Tranel (Tranel), a clinical psychologist who conducted a neuropsychological evaluation of L.D., and Joni Patterson-Croskey (Patterson-Croskey), a social worker who had been counseling the two children. L.D. also was to have ongoing contact with her children under DPHHS supervision; be evaluated by a DPHHS-approved psychiatrist within five days of the August 17, 1999, court hearing to

assess her medication needs; obtain vocational rehabilitation assistance; avoid contact with her boyfriend T.E. and K.D.'s father, D.K.; and attend both individual and family therapy. Clymer testified that L.D. failed to complete this goal because she: had no contact with her children during the five-week period of her disappearance and only sporadic contact thereafter; failed to pursue vocational rehabilitation assistance until February of 2000; had a number of contacts with T.E. during the period of the treatment plan; failed to get an evaluation from a psychiatrist; did not begin individual therapy sessions until February of 2000; and did not attend family therapy sessions with the children.

¶14 The third goal of the treatment plan was to increase L.D.'s ability to independently parent, budget, maintain a household, utilize community resources and become self-reliant. The associated tasks required L.D. to maintain employment to support the family, maintain a clean and safe home, keep her residence free of drugs and alcohol, allow DPHHS to access her home on at least three occasions to assess its suitability for the children, and have a minimum of two weekly visits with J.W. and K.D. Clymer testified that L.D. failed to successfully complete these tasks as well. Although L.D. was employed at the time of the hearing on the petition to terminate her parental rights, she did not maintain employment from August 18, 1999 through the end of January of 2000 because she had disappeared and then was in jail. Moreover, she did not maintain a residence during that time period and, at the time of the hearing, was living at the God's Love Family Transitional Center in Helena, Montana, which Clymer believed to be an inappropriate environment for the children. Consequently, DPHHS had been unable to assess L.D.'s ability to maintain employment or provide a safe home over a period of time. L.D. also failed to have bi-weekly visits with the children during the period of the treatment plan.

¶15 The fourth goal of the treatment plan required L.D. to facilitate and maintain cooperation with DPHHS by maintaining contact with her DPHHS social worker every two weeks, keep DPHHS informed as to her criminal charges and sentencing, participate in a Family Group Conference to establish a permanency and safety plan for the children, and provide DPHHS with all necessary information it requested from her. Clymer testified that L.D. had not maintained regular contact with DPHHS at any time during the treatment plan period. Furthermore, she did not attend the Family Group Conference because she was in jail at the time, although she did make unsuccessful efforts to be available for the conference via telephone. In Clymer's view, overall, L.D. did not successfully complete the fourth goal of the treatment plan.

¶16 Notwithstanding Clymer's testimony supporting the District Court's finding that she did not substantially complete any of the goals of her second treatment plan, L.D. points to evidence indicating that she did some of the tasks required of her under the plan. For example, she studied two parenting handbooks while in jail and sent written reports on them to DPHHS. Moreover, once she was released from jail, she obtained employment, began attending alcoholics and narcotics anonymous meetings, found a place to live at the God's Love Family Transitional Center, was receiving counseling services through Boyd Andrew Community Services, had taken urinalysis tests on request, had started taking parenting classes and had been sober for nearly a year. On this basis, she argues that the District Court's finding was erroneous because she substantially complied with the treatment plan.

¶17 The fact that L.D. completed some of the tasks in the treatment plan does not conflict with the court's finding that she did not substantially complete the plan. Well-intentioned efforts toward successful completion of a treatment plan do not demonstrate either the completion or the success of the plan. In re S.M., 1999 MT 36, ¶ 25, 293 Mont. 294, ¶ 25, 975 P.2d 334, ¶ 25. Indeed, a treatment plan can be unsuccessful even when the required tasks are completed. In re S.M., ¶ 25. The record establishes that L.D. did not complete all of the tasks within any of the four goals of her second treatment plan. Moreover, the tasks she did make an effort toward completing were not done until the last month of the plan. For the first five months of the treatment plan, she made little, if any, progress in achieving the treatment plan goals. Additionally, although she asserted she had been sober for nearly a year at the time of the hearing, she had disappeared for five weeks in August and September of 1999, during which time DPHHS could not monitor whether L.D. abstained from using drugs and alcohol.

¶18 The record before us contains substantial evidence supporting the District Court's finding that L.D. did not substantially complete the tasks in her treatment plan. Furthermore, the court did not misapprehend the effect of the evidence and we are not left with a definite and firm conviction that a mistake has been committed. As a result, we conclude that the District Court's finding that L.D. did not complete her court-approved treatment plan is not clearly erroneous.

### B. Conduct unlikely to change within a reasonable time

¶19 Section 41-3-609, MCA, provides, in pertinent part, that

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:

(a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

(b) a history of violent behavior by the parent;

(c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and

(d) present judicially ordered long-term confinement of the parent.

(3) In considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.

In accordance with the above statute, the District Court found that L.D. has an extensive history of drug abuse marked by repeated recovery and relapse, is incapable of being a reliable, sober and clean parent, and is unable to place her children's needs before her own. The court further found that these conditions were unlikely to change within a reasonable period of time. Additionally, the court found that the children needed a permanent, stable and safe home and could not wait any longer for their mother to attempt to provide that home. L.D. contends that the court's findings in this regard are clearly erroneous.

¶20 Clymer testified that L.D. had completed two drug treatment programs in Oregon in the past--one inpatient and one outpatient--and had relapsed into drug abuse after each. In addition, Lorena Foote (Foote), a chemical dependency counselor with ADSGC, testified that L.D. had completed intensive outpatient treatment through that program, but had left before her aftercare treatment was completed. Foote further testified that she had recommended L.D. receive a higher level inpatient treatment for drug abuse. L.D. did not follow through with this recommendation.

¶21 Tranel testified that L.D.'s problems went beyond just her chemical dependency issues because she had not developed the ordinary and necessary coping skills and adaptive abilities. Consequently, she has a difficult time dealing with age-appropriate social, vocational and interpersonal responsibilities and has not learned normal parenting abilities. Tranel further testified that it was an unlikely prospect for L.D. to assume a parenting role and provide even a minimum standard of parenting to her children without intensive treatment. Moreover, in Tranel's opinion, J.W. and K.D. need an environment providing the basic ingredients of child development and L.D. was unable to provide that environment. He stated that L.D. would need at least a year of sobriety followed by a treatment program designed to address her other life functioning skills before being able to adequately parent her children. According to Tranel, it would probably take several years for L.D. to reach a level where she could function as a parent.

¶22 The testimony of Clymer and Tranel clearly addresses the factors set forth in § 41-3-609(2)(a) and (c), MCA, and provides substantial evidence in support of the District Court's findings that L.D.'s drug dependency and other psychological problems render her unlikely to be able to care for her children's physical, mental and emotional needs within a reasonable time. Moreover, Patterson-Croskey, the children's therapist, testified that J.W. and K.D. need a stable home with adults who could provide them a sense of physical, emotional and psychological security. She stated that the children need this sense of security immediately and could not wait for L.D. to complete treatment. Under § 41-3-609 (3), MCA, the District Court must give primary consideration to the children's physical, mental and emotional conditions and needs. Patterson-Croskey's testimony provides substantial evidence supporting the court's finding that the most important factor in the case was the children's need for a stable environment and that L.D. could not provide that environment in the near future.

¶23 In support of her argument that the District Court's findings are clearly erroneous, L.D. relies on her evidence that she had been sober for nearly a year at the time of the hearing on the petition to terminate her parental rights. She asserts that, according to Tranel, maintaining sobriety for a year was "the benchmark condition for her to have her children back . . . ." She further contends that her sobriety, combined with her attendance at parenting classes, obtaining full-time employment, and attending alcohol and narcotics anonymous meetings were real changes in her life which indicated that the conditions rendering her unfit to parent had changed.

¶24 While it may or may not be true that L.D. had been sober for nearly a year at the time of the hearing, she failed to follow the ADSGC recommendation that she complete inpatient substance abuse treatment. This fact, coupled with the evidence that she had relapsed after two previous substance abuse treatment programs, supports the District Court's finding that the chances of her remaining sober in the long run were by no means guaranteed. Moreover, L.D.'s reliance on her one-year period of sobriety ignores Tranel's testimony that, in addition to a period of sobriety, L.D. needs intensive and long-term therapy to treat her other psychological and emotional problems and develop her ability to effectively parent her children. L.D.'s limited progress in some areas addressed by her treatment plan does not indicate that all of the conduct or conditions which render her unfit to parent will change within a reasonable time. We conclude that the District Court's finding pursuant to § 41-3-609(1)(f)(ii), MCA, that the conduct or conditions rendering L.D. unfit to parent are not likely to change within a reasonable time is not clearly erroneous.

¶25 Having concluded that the District Court's findings that L.D. failed to substantially complete her treatment plan and the conduct or conditions which render her unfit to parent are not likely to change within a reasonable time, we hold that the District Court did not abuse its discretion in terminating L.D.'s parental rights.

¶26 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM REGNIER