No. 03-049

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 241

IN THE MATTER OF B.N.Y.,

     A Youth In Need Of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow, Cause No. DN-00-37,
Honorable Kurt Krueger, Judge Presiding

COUNSEL OF RECORD:

     For Appellant:

          Patrick T. Gallagher, Skakles and Gallagher, Anaconda, Montana

     For Respondent:

          Honorable Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

          Ross Richardson, Henningson, Vucurovich & Richardson, Butte,
Montana

          Mary Kay Starin, Attorney at Law, Butte, Montana (Guardian At Litem)

Submitted on Briefs:  May 22, 2003

Decided:  September 11, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 R.W., the natural mother of B.N.Y, appeals from the Findings of Fact, Conclusions of Law and Order entered by the Second Judicial District Court, Silver Bow County, terminating her parental rights to B.N.Y. We reverse.

¶2 R.W. raises three issues on appeal which we restate as follows:

¶3 1. Did the District Court violate R.W.'s due process rights?

¶4 2. Did the District Court err in ordering the treatment plan prepared by the Department of Public Health and Human Services (Department)?

¶5 3. Did the District Court err in finding that B.N.Y.'s condition was a result of abuse and neglect by R.W. and that R.W. was currently unfit and unable or unwilling to give B.N.Y. adequate parental care?

¶6 Because we find the first issue dispositive, we do not reach Appellant's second and third issues.

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 B.N.Y. was born March 5, 1990, and at the time of the termination proceedings, was twelve years old. K.Y., B.N.Y.'s natural father, relinquished his parental rights during the course of the proceedings below and is not a party to this appeal. B.N.Y. has been in the temporary legal custody of the Department since July 20, 2000.

¶8 The Department first became concerned about B.N.Y.'s welfare in February 1992, after receiving a referral that R.W. left B.N.Y., then twenty-three months old, in the care of a babysitter while suffering from a severe fever and vomiting. From 1992 until 1998, the

Department received numerous referrals concerning B.N.Y., including several from B.N.Y.'s teachers who reported concerns of physical abuse and neglect, as well as concerns about B.N.Y.'s disruptive behaviors.

¶9 When B.N.Y. was seven years old, R.W. left her in the care of Cherie Guidoni (Guidoni), B.N.Y.'s paternal cousin. On June 26, 1998, Guidoni petitioned the Fifth Judicial District Court, Beaverhead County, for guardianship of B.N.Y. and, with the consent of both R.W. and K.Y., was appointed guardian on July 1, 1998.

¶10 While in Guidoni's custody, B.N.Y. exhibited numerous behavioral problems for which Guidoni sought assistance from the Children's Comprehensive Services (CCS) program in Butte, Montana. An examining psychiatrist at CCS diagnosed B.N.Y. with reactive attachment disorder and a depressive disorder, and she was subsequently admitted to the residential treatment program there.

¶11 B.N.Y.'s treating physician, Dr. Bruce Smith, ordered the cessation of contact between R.W. and B.N.Y. due to B.N.Y.'s increased behavioral problems after visits with her mother. R.W. thereafter petitioned the Fifth Judicial District Court, Beaverhead County, to terminate the guardianship. The District Court recognized R.W.'s legal right to terminate the guardianship, but rather than dissolve the guardianship immediately, chose to "phase out" the guardianship over a period of months, finding that a phasing out would be in the best interest of B.N.Y. and provide the Department time to initiate abuse and neglect proceedings, if appropriate. The District Court stated:

> If indeed the facts establish grounds for intervention to preserve the present *de facto* custody, it should be done judicially by a petition for investigative

3

authority by the Department . . . and not b[e] a private guardian in whom the mother has lost confidence.

¶12     The Department did not thereafter file a petition for temporary investigative authority, as envisioned by the District Court, but, rather, filed a petition for temporary legal custody in the Second Judicial District Court, Silver Bow County, on June 26, 2000. On July 20, 2000, the District Court conducted a hearing on the Department's petition in which Jennifer Hoerauf (Hoerauf), a community social worker for the Department, testified. After hearing Hoerauf's testimony, the court granted the Department's petition, despite R.W.'s absence from the hearing, and without making a finding of abuse or neglect by a preponderance of the evidence.

¶13     Although R.W. was not represented by counsel at that time, she remarkably filed a motion to dismiss the Department's petition which correctly noted that no previous abuse and neglect proceeding had been initiated under § 41-3-401, MCA (1999), and that the court had not entered a finding of abuse and neglect. The District Court did not rule on R.W.'s motion.

¶14     On the recommendation of her therapist and CCS, B.N.Y. was transferred to Intermountain Children's Home (Intermountain) in Helena, Montana, in December 2000 for further treatment. Like CCS, Intermountain is a residential facility for children suffering from extreme behavioral and emotional disorders.

¶15     Shortly after B.N.Y. was transferred to Intermountain, the Department began a series of attempts to engage R.W. in a treatment plan. On May 21, 2001, the court ordered the Department's proposed treatment plan, the purpose of which was to determine whether

4

reunification of mother and child was possible. The treatment plan was scheduled to last only until July 30, 2001. Although the District Court would eventually conclude that the plan was unsuccessful, R.W. complied with all of its terms.

¶16 On March 25, 2002, following a hearing held on the Department's request for continuance of temporary legal custody and the mother's motions for replacement of counsel, the District Court entered findings of fact, conclusions of law, and an order, and for the first time, adjudicated B.N.Y. a youth in need of care. The court found:

> There has been sufficient evidence presented to establish, by a preponderance of the evidence, that the above-named child is a Youth in Need of Care as defined in Mont. Code Ann. § 41-3-102 (2001), such that the Court should enter an order of adjudication and temporary legal custody.

¶17 On July 26, 2002, the Department petitioned for permanent legal custody and termination of parental rights. After hearing, the District Court entered findings of fact, conclusions of law and order terminating R.W.'s parental rights on the grounds that the treatment plan was unsuccessful, that the conduct or condition of R.W. was unlikely to change within a reasonable time, and that B.N.Y.'s best interests would be served by terminating the parent-child relationship. From this order, R.W. appeals.

STANDARD OF REVIEW

¶18 The decision to terminate parental rights is a discretionary ruling which we review to determine whether the District Court abused its discretion. *In re J.W.*, 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7. We will affirm findings of fact in parental right termination cases unless the findings are clearly erroneous; that is, they are not supported by substantial evidence, the District Court misapprehended the effect of the evidence, or a

review of the record leaves us with the definite and firm conviction that the court made a mistake. *In re A.N. and C.N.*, 2000 MT 35, ¶ 22, 298 Mont. 237, ¶ 22, 995 P.2d 427, ¶ 22. We review conclusions of law in a termination proceeding to determine if those conclusions are correct. *In re E.W.*, 1998 MT 135, ¶ 11, 289 Mont. 190, ¶ 11, 959 P.2d 951, ¶ 11.

DISCUSSION

¶19 *Did the District Court violate R.W.'s due process rights?*

¶20 As she asserted in the District Court, R.W. argues on appeal that the District Court failed to properly adjudicate B.N.Y. a youth in need of care prior to ordering the treatment plan, thereby violating her rights to due process of law and requiring reversal of the order terminating her parental rights to B.N.Y.

¶21 A natural parent's right to care and custody of a child is a fundamental liberty interest which courts must protect with fundamentally fair procedures at all stages of the proceedings for the termination of parental rights. *In re T.C. and W.C.*, 2001 MT 264, ¶ 22, 307 Mont. 244, ¶ 22, 37 P.3d 70, ¶ 22; *In re A.F.-C.,* 2001 MT 283, ¶ 31, 307 Mont. 358, ¶ 31, 37 P.3d 724, ¶ 31. Accordingly, procedures employed to terminate the relationship between a parent and child must meet the requisites of the Due Process Clause of the Fourteenth Amendment. *Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 24-32, 101 S.Ct. 2153, 2158-62, 68 L.Ed.2d 640, 648. Although "due process" cannot be precisely defined, the phrase requires "fundamental fairness." *Lassiter,* 452 U.S. at 24-25, 101 S.Ct. at 2158, 68 L.Ed.2d at 648. Fundamental fairness requires fair procedures. *In re A.F.-C.*, ¶ 50. We have repeatedly held that prior to terminating parental rights, the District Court must adequately address each

applicable statutory requirement. *In re A.M.*, 2001 MT 60, ¶ 34, 304 Mont. 379, ¶ 34, 22 P.3d 185, ¶ 34; *In re E.W.*, ¶ 12; *In re J.W.*, ¶ 7.

¶22 Section 41-3-609(1)(f), MCA, authorizes a court to terminate parental rights upon finding that a child has been adjudicated a youth in need of care, an appropriate court-approved treatment plan has not been complied with or has not been successful, and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. The adjudication of a child as a youth in need of care is a threshold requirement without which a court may not grant temporary legal custody, order a court ordered treatment plan, or terminate a person's parental rights under the statute. Sections 41-3-406(1)(c), 41-3-420(1), and 41-3-609(1)(f), MCA. In *In re T.C.*, we held that "before a court may address the treatment plan, the court must first judge the child as a 'youth in need of care.' . . . Without such a determination, a court may not sever a parent's parental rights." *In re T.C.*, ¶ 15 (citation omitted).

¶23 Here, the District Court concluded that the treatment plan was unsuccessful and pursuant to § 40-3-609(1)(f), MCA, terminated R.W.'s parental rights. R.W. argues that the District Court erred in terminating her parental rights pursuant to the above statute because the court failed to make the necessary finding of abuse and neglect after hearing as required by § 41-3-404, MCA, and thus, lacked jurisdiction to grant temporary legal custody or to order a court approved treatment plan.

¶24 A court may order a treatment plan upon the stipulation of the parties or a judicial finding that the child is a youth in need of care. Section 41-3-420, MCA. Here, R.W. did

not stipulate that B.N.Y. was a youth in need of care. Consequently, the court was required to conduct a hearing and determine, by a preponderance of the evidence, that B.N.Y. was a youth in need of care as mandated by § 41-3-404, MCA, before ordering a treatment plan.

¶25 Section 41-3-404, MCA, provides:

> (1) In the adjudicatory hearing . . . the court shall determine by a preponderance of the evidence whether the youth is a youth in need of care and ascertain, as far as possible, the cause.
>
> (2) The court shall hear evidence regarding the residence of the youth, the whereabouts of the parents, guardian, or nearest adult relative, and any other matters the court considers relevant in determining the status of the youth.

¶26 By definition, a "youth in need of care," § 41-3-102(23), MCA, is a youth who has been adjudicated or determined, after a hearing, to be or to have been abused or neglected. Such a finding, pursuant to § 41-3-404(1), MCA, must be determined by a preponderance of the evidence. *See In re the Matter of M.O.*, 2003 MT 4, ¶ 14, 314 Mont. 13, ¶ 14, 62 P.3d 265, ¶ 14; *In re T.C.*, ¶ 18 (citing *Matter of M.J.W.*, 1998 MT 142, ¶ 12, 289 Mont. 232, ¶ 12, 961 P.2d 105, ¶ 12). Here, there was no such adjudication prior to the implementation of a treatment plan.

¶27 In response, the Department argues that B.N.Y. was found to be a youth in need of care within the earlier guardianship proceedings before the Fifth Judicial District Court. However, in *In re F.M.*, 2002 MT 180, 311 Mont. 35, 53 P.3d 368, we rejected the Department's assertion that an adjudication could be properly established by evidence received at a hearing concerning a collateral matter; in that case, a custody hearing within the parent's dissolution proceeding. *In re F.M*, ¶ 30. Thus, the findings entered by the Fifth Judicial District Court in the collateral guardianship proceeding suffer the same infirmity as

8

the findings in the custody proceeding referenced in *In re F.M.* Further, the guardianship findings did not involve the child abuse and neglect statutes. We would note that even the language of that court's order, which indicated that "*if* indeed the facts establish grounds for intervention to preserve the present *de facto* custody, it should be done judicially by petition for investigative authority," contemplated the Department taking the appropriate steps to adjudicate B.N.Y.'s status as a youth in need of care. We conclude, therefore, that the findings in the guardianship proceedings did not satisfy, as a matter of law, the adjudicatory requirements of § 41-3-404, MCA.

¶28 The District Court's approval of a treatment plan on May 21, 2001–the terms of which were all completed by R.W.–some ten months prior to adjudicating B.N.Y. a youth in need of care, violated §§ 41-3-406(1)(c) and 41-3-420(1), MCA. "[B]efore a court may address the treatment plan, the court must first judge the child as a 'youth in need of care.' . . . Without such a determination, a court may not sever a parent's parental rights." *In re T.C.*, ¶ 15 (citation omitted). The absence of an adjudication prior to approval of a treatment plan renders the statutory requirements of § 41-3-609(1)(f), MCA, unsatisfied. The District Court failed to comply with statute and provide fundamentally fair procedures at each stage of the termination proceedings, as required by due process, thus erring in terminating R.W.'s parental rights.

¶29 Reversed.

/S/ JIM RICE

We concur:

9

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART