No. 05-301

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 34

IN THE MATTER OF B.N.Y.,

    A Youth In Need Of Care.

APPEAL FROM:    The District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DN 2003-43-JWW,
Honorable John W. Whelan, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Patrick T. Gallagher, Skakles & Gallagher, Anaconda, Montana

    For Respondent:

    Honorable Mike McGrath, Attorney General; Jon Ellingson, Assistant
Attorney General, Helena, Montana

    Ross P. Richardson, Henningsen, Vucurovich & Richardson, Butte,
Montana

    Mary Kay Starin, Attorney at Law, Butte, Montana (Guardian ad Litem)

Submitted on Briefs:  December 7, 2005

Decided:  February 22, 2006

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 R.W., mother of B.N.Y., appeals from the order of the Second Judicial District Court granting the Department of Public Health and Human Services (Department) a planned permanent living arrangement and permanent care, control, and custody of B.N.Y., R.W.'s fifteen-year-old daughter. R.W. argues res judicata and collateral estoppel preclude this action against her parental rights, and further, that procedural errors in the proceeding violated her right to due process. We affirm.

¶2 We consider the following issues on appeal:

¶3 (1) Do the doctrines of res judicata and collateral estoppel bar the Department's petition to limit the parental rights of R.W.?

¶4 (2) Was R.W.'s right to due process violated in this proceeding?

## BACKGROUND

¶5 B.N.Y. has had an extremely difficult childhood. Born to R.W. on March 5, 1990, reports of her neglect and physical abuse began just two years into her life, and continued into her teenage years. As a result, the Department kept a watchful eye on B.N.Y. for most of her life, and for various periods obtained temporary legal custody over her. Sadly, R.W. has struggled with parenting, and B.N.Y. has shown emotional and behavioral difficulties from an early age, forcing the Department to place her in at least two group homes. B.N.Y. has been in the care of the Department since 2000.

¶6 This is the second time R.W. and B.N.Y. have been before this Court. In July 2002, following repeated attempts by the Department to reunify R.W. and B.N.Y., the

2

Department petitioned to have R.W.'s parental rights terminated. After a hearing, the Second Judicial District Court agreed and terminated R.W.'s parental rights. However, arguing that her right to due process had been violated, R.W. appealed, and we reversed. *In re B.N.Y.*, 2003 MT 241, ¶¶ 19, 28, 317 Mont. 291, ¶¶ 19, 28, 77 P.3d 189, ¶¶ 19, 28. We held that in failing to comply with the statutes, despite R.W.'s objection, the District Court violated R.W.'s constitutional right to due process. *In re B.N.Y.*, ¶ 28.

¶7 Almost immediately after our decision in *In re B.N.Y.* was rendered, the Department renewed its protective efforts regarding B.N.Y. by filing a petition for emergency services, adjudication of B.N.Y. as a youth in need of care, and for temporary legal custody. On October 3, 2003, R.W. moved to dismiss the new action on the grounds that it was barred by the doctrines of res judicata and collateral estoppel. The District Court denied that motion on December 11, 2003.

¶8 On February 20, 2004, the District Court held a hearing on the Department's petition and thereafter adjudicated B.N.Y. a youth in need of care and granted the Department temporary legal custody. The Department thereafter prepared a treatment plan for R.W., who insisted on alterations to the plan. The Department then incorporated alterations to the treatment plan, but R.W. still declined to sign. A treatment plan was never approved by the court.

¶9 In the time following the court's adjudication of B.N.Y. as a youth in need of care, R.W. was unable to establish stability in her home in a manner that would warrant the Department returning custody of B.N.Y. to her care. Instead, R.W.'s circumstances

3

forced the Department to seek a continuation of temporary custody by motion on August 11, 2004. After a hearing on August 20, 2004, the District Court granted that motion over R.W.'s objection.

¶10 On November 17, 2004, the Department moved the court for an order setting a permanency plan hearing. That hearing took place on January 6, 2005. Thereafter, the court approved the Department-sponsored permanency plan on January 10, 2005. That plan proposed to keep B.N.Y. in the care of the Shodair Children's Hospital (Shodair) until she could tolerate a "step-down in the level of care needed." B.N.Y. resided at Shodair because of continued behavioral and emotional difficulties.

¶11 Showing improvement, B.N.Y. left Shodair on February 19, 2005, and, with the support of the Department, began residing with the licensed therapeutic foster mother who had previously cared for B.N.Y. Following discussions between the Department and the foster mother which led to an agreement that the foster mother could and would care for B.N.Y. over the long term, the Department petitioned the District Court for a planned permanent living arrangement, and permanent custody, care, and control of B.N.Y. B.N.Y. herself expressed a desire to live with the foster mother. The Department, in accordance with the permanency plan, desired placement of B.N.Y. in a permanent and stable living arrangement.

¶12 The District Court held a hearing on that petition on April 7, 2005, and thereafter approved the planned permanent living arrangement and granted permanent custody of B.N.Y. to the Department. In doing so, the court took judicial notice of all the

4

proceedings involving B.N.Y. and R.W., including those that preceded this Court's opinion in *In re B.N.Y.*, 2003 MT 241, 317 Mont 291, 77 P.3d 189. Furthermore, the court found that while the Department had made reasonable efforts to reunite R.W. and B.N.Y., further efforts "would likely be unproductive," and therefore, concluded that reunification of R.W. with B.N.Y. was not in B.N.Y.'s best interest. At the time of that order B.N.Y. was fifteen years of age, and had been, since July of 2000, in the care of the Department.

¶13 Although the District Court approved the planned permanent living arrangement and granted permanent custody of B.N.Y. to the Department, it did not terminate R.W.'s parental rights. According to the order, the court left open the possibility of R.W. regaining custody of her daughter, stating:

> [t]he Court may terminate this planned permanent living arrangement upon petition of the natural mother or the Department if the Court finds that the circumstance of the child or family have substantially changed and the best interests of the child are no longer being served in their placements.

¶14 From this order, R.W. appeals.

### STANDARD OF REVIEW

¶15 This Court reviews a district court's conclusions of law to determine if they are correct. *In re M.A.E.*, 1999 MT 341, ¶ 17, 297 Mont. 434, ¶ 17, 991 P.2d 972, ¶ 17, *citing In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11. We review a court's findings of fact to determine whether they are clearly erroneous. *In re M.A.E.*, ¶ 17. "A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or, if after reviewing the

5

record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re M.A.E.*, ¶ 17.

¶16 Finally, "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In re J.N.*, ¶ 12.

## DISCUSSION

*¶17 Do the doctrines of res judicata and collateral estoppel bar the Department's present action to limit the parental rights of R.W.?*

¶18 Res judicata and collateral estoppel are doctrines based upon a judicial policy "favoring a definite end to litigation." *Kullick v. Skyline Homeowners Association*, 2003 MT 137, ¶ 17, 316 Mont. 146, ¶ 17, 69 P.3d 225, ¶ 17. In sum, they "deter the splitting of a single cause of action into more than one lawsuit." *Smith v. Schweigert* (1990), 241 Mont. 54, 59, 785 P.2d 195, 198; *see also Allen v. McCurry* (1980), 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308, 313.

¶19 "Res judicata bars a party from relitigating a matter that the party has already had an opportunity to litigate." *Kullick*, ¶ 17. However, the doctrine only governs where a final judgment has been entered in the underlying action. *Holtman v. 4-G's Plumbing and Heating* (1994), 264 Mont. 432, 436, 872 P.2d 318, 320. Assuming a final judgment, res judicata applies if the following elements have been satisfied:

> (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate

to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and to the issues between them.

*Kullick*, ¶ 17.

¶20 Collateral estoppel "is a form of res judicata, and bars the reopening of an issue that has been litigated and resolved in a prior suit." *Kullick*, ¶ 18. Collateral estoppel has three elements:

> (1) the identical issue raised was previously decided in a prior adjudication;
> (2) a final judgment on the merits was issued in the prior adjudication; and
> (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication.

*Kullick*, ¶ 18.

¶21 Citing res judicata and collateral estoppel, R.W. argues that the Department's 2002 action to terminate her parental rights, which ultimately resulted in this Court reversing the District Court's order terminating those rights, precludes the present action. In other words, she argues that because the Department did not give her fundamentally fair procedures when it attempted to terminate her parental rights in 2002, it may no longer attempt to protect the interests of B.N.Y. by limiting her contact with the child. For the following reasons, R.W.'s argument fails.

¶22 R.W. is correct in noting that:

> Prior Montana cases disclose the general rule that where a decision has been rendered by the Supreme Court on a particular issue between the same parties in the same case, whether that decision is right or wrong, such decision is binding on the parties and the courts and cannot be relitigated in a subsequent appeal.

7

*State v. Van Dyken* (1990), 242 Mont. 415, 425, 791 P.2d 1350, 1356.  However, R.W. is incorrect in arguing that the principle precludes the present action.  The only issue that this Court decided in our 2003 decision was whether the District Court violated R.W.'s right to due process.  *In re B.N.Y.*, ¶¶ 6, 28.  We held that the District Court had violated R.W.'s right to due process, and reversed, essentially vacating the District Court's order terminating R.W.'s parental rights.  *In re B.N.Y.*, ¶ 28.  Of critical importance to the present action, our decision in *In re B.N.Y.* meant that the District Court's 2002 order terminating R.W.'s parental rights did not constitute a final judgment.

¶23　As noted above, both res judicata and collateral estoppel require a final judgment in an initial action before they will preclude a similar future action.  Because the District Court's 2002 order terminating R.W.'s parental rights is not a final judgment as a result of *In re B.N.Y.*, it has no preclusive effect in the Department's current action.  Therefore, R.W.'s argument that res judicata and collateral estoppel bar the current action must fail.

*¶24　Was R.W.'s right to due process violated in this proceeding?*

¶25　R.W. argues that procedural errors in the current action deprived her of due process.  First, R.W. argues that the Department failed to make reasonable efforts to reunify R.W. and B.N.Y. in violation of § 41-3-423(1), MCA (2003), a statute which requires the Department to "make reasonable efforts to . . . reunify families that have been separated by the state."  This argument has no merit.  The record indicates that the Department, since taking custody of B.N.Y. in 2000, has repeatedly tried to reunify R.W. and B.N.Y.  The District Court noted as such, saying in its order of January 10, 2005,

8

[R.W.] objected arguing that the Department has not shown that reasonable efforts were made to prevent the need for removal of the child or to reunify the child with her mother. However, the record is replete with [evidence] of the Department's efforts in this regard. This Court has taken judicial notice of Cause No. DN-00-37 and the efforts reflected there included professional therapy and treatment afforded to the child by the Department since July, 2000, which were designed to treat her extensive psychological damages. There was also a Court-approved Treatment Plan which was unsuccessful in reuniting the child with her mother. More recently, under Cause No. DN-03-43, the Department continued to seek the advice of professionals who were treating the child and who opined that the child could not be returned to her mother. This evidence was uncontroverted. Further, the natural mother asked to have her own professional appointed to determine the condition of the child and whether reunification was possible. The Department supported this request but the natural mother has since rescinded this petition. This Court can not conceive of any other "reasonable efforts" which could have been made by the Department, nor has the natural mother provided other alternatives.

R.W. counters by arguing that since the majority of these efforts pre-date the Department's original petition to terminate her parental rights, they cannot be cited in the present action. However, she cites no authority for this point, and after review of the statutes, we find no authority to support it. It is evident from the record that the Department made reasonable efforts to reunify R.W. and B.N.Y. Unfortunately, those efforts failed. Nevertheless, the Department complied with the mandates of § 41-3-423, MCA (2003).

¶26 R.W.'s second argument is that the District Court, while purporting only to grant a planned permanent living arrangement and permanent care and control of B.N.Y. to the Department, in effect terminated her parental rights to B.N.Y. without following the required statutory procedures. R.W. does not cite to any particular procedures or statutes that she was entitled to and did not receive, though presumably she refers to the

9

procedures afforded by § 41-3-609, MCA (2003), entitled "Criteria for Termination." In any event, we hold that the District Court did not terminate her parental rights, and as a result, her argument that the District Court violated "statutory procedures" in "terminating" her parental rights must fail.

¶27 While the District Court did grant the Department's petition for a planned permanent living arrangement and permanent care and custody of B.N.Y., it did not terminate R.W.'s parental rights. In fact the District Court specifically noted:

> [t]he Court may terminate this planned permanent living arrangement upon petition of the natural mother or the Department if the Court finds that the circumstance of the child or family have substantially changed and the best interests of the child are no longer being served in their placements.

It is evident from this notation that the District Court intended to limit R.W.'s parental rights, while at the same, allowing R.W. the opportunity to regain those rights in the future. Had the court terminated R.W.'s parental rights it would have "divest[ed] the child and the [parent] of 'all legal rights, powers, immunities, duties, and obligations with respect to each other . . . ." *In re R.T.L.P.* (1989), 238 Mont. 384, 391, 777 P.2d 892, 896 (citation omitted). The court, however, chose not to do so.

¶28 As we noted in *In re R.T.L.P.*, "[a]n award of long-term custody does not totally terminate the rights of the natural parent." 238 Mont. at 391, 777 P.2d at 896. Thus, while the District Court severely limited R.W.'s rights, those rights were not terminated. For that reason, R.W.'s argument that her parental rights were improperly terminated must fail.

10

¶29 R.W.'s third argument in support of her due process claim is that the Department failed to petition the District Court for termination of her parental rights in a timely fashion pursuant to § 41-3-604, MCA (2003). This is a curious argument. In essence, R.W. is arguing that in opting to seek a planned permanent living arrangement *instead* of termination of her parental rights, the Department violated her right to due process by not properly following the termination procedures. If the Department did anything, it sought an arrangement that would preserve the parental rights of R.W.

¶30 Importantly, § 41-3-604, MCA (2003), also provides that the Department does not have to petition to terminate parental rights under the statute if, "the department has documented a compelling reason, available for court review, for determining that filing a petition to terminate parental rights would not be in the best interests of the child." Section 41-3-604(1)(c), MCA (2003). Here, the Department strove to reunify R.W. with B.N.Y. for many years, and did not casually seek termination of R.W.'s parental rights. We conclude that this justification is compelling. For that reason, we hold that the Department did not violate R.W.'s right to due process when it decided against seeking termination of R.W.'s parental rights under § 41-3-604, MCA (2003).

¶31 Finally, R.W. asserts that the District Court violated her right to due process when it failed to hold a permanency plan hearing within the statutory time limits pursuant to § 41-3-445(1)(a)(i), MCA (2003). That provision requires a court to hold a permanency plan hearing:

11

(A) within 30 days of a determination that reasonable efforts to provide preservation or reunification services are not necessary under 41-3-423, 41-3-438(6), or 41-3-442(1); and

(B) no later than 12 months after the initial court finding that the child has been subjected to abuse or neglect or 12 months after the child's first 60 days of removal from the home, whichever comes first.

The purpose of the hearing is to "assure that children taken into protective custody by the DPHHS do not languish in foster care or fall through the proverbial administrative crack." *In re A.R.*, 2004 MT 22, ¶ 21, 319 Mont. 340, ¶ 21, 83 P.3d 1287, ¶ 21. Here, pursuant to statute, the District Court adjudicated B.N.Y. a youth in need of care as a child who was subject to abuse or neglect on September 16, 2003. However, the court did not hold a permanency plan hearing until January 6, 2005, or about three and a half months beyond the time provided in § 41-3-445, MCA (2003). However, as in *In re A.R.*, we hold that because the procedures afforded to R.W. were fair, and because the purposes of a permanency plan were achieved, her right to due process was not violated.

¶32   In *In re A.R.* we held that the District Court's failure to hold a permanency plan hearing was not fundamentally unfair because the Department was "actively working with both biological parents in an attempt to reunify the children with one of them." *In re A.R.*, ¶ 21. As a result of the Department's efforts there, we concluded that the purposes of the permanency plan were achieved, i.e., arrangements were being made to ensure that the child would not languish in foster care indefinitely, and therefore concluded that the parent's right to due process was not violated. *In re A.R.*, ¶¶ 21-22.

¶33 The same reasoning applies here. The Department has attempted to reunify B.N.Y. and R.W. since 2000. At the same time, the Department has worked diligently to create a permanent and stable environment for B.N.Y. The Department placed B.N.Y. in group and foster homes and has continually provided treatment of B.N.Y.'s behavioral and emotional difficulties. During that time, R.W. had opportunities to regain custody of B.N.Y., yet she repeatedly failed to agree to or complete treatment programs. Based on this evidence, we conclude that the Department achieved, by its own diligence, what would have been achieved by a permanency plan hearing–that is, it ensured that B.N.Y. would not languish in foster care. For this reason, R.W.'s argument that the tardy permanency plan hearing violated her right to due process must fail.

¶34 Affirmed.

/S/ JIM RICE

We concur:

/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

13