

DA 07-0655

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 247

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF

D.A. and M.A.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause Nos. BDN 2006-19 and
BDN 2006-20
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

            Hon. Mike McGrath, Attorney General; Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

            Leo J. Gallagher, Lewis and Clark County Attorney; Carolyn Clemens,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  April 2, 2008

Decided:  July 15, 2008

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 A.A. and I.A. appeal a judgment of the First Judicial District Court, Lewis and Clark County, terminating their parental rights to D.A. and M.A.

¶2 The parents raise three issues on appeal, which we restate as follows:

¶3 Did the District Court err in terminating the parental rights of A.A. and I.A.?

¶4 Did the District Court erroneously terminate A.A. and I.A.'s parental rights based solely on the presumption that when a child has been in foster care in custody of the state for 15 of the most recent 22 months, the best interests of the child will be served by termination of parental rights?

¶5 Did the District Court commit plain error which violated the parents' due process rights when it ordered DPHHS to take steps to permanently place the children following the permanency hearing?

**BACKGROUND**

¶6 In 2003 I.A. prematurely gave birth to D.A. He tested positive for methamphetamine at birth, as did both parents. The Department of Public Health and Human Services (DPHHS) immediately obtained temporary legal custody of D.A. The case was dismissed ten months later. In 2005, I.A. gave birth to M.A. prematurely, and I.A. again tested positive for methamphetamine. DPHHS removed both children from I.A. and A.A. and placed them in foster care. The parents completed treatment plans, the children were returned to their care, and the case was dismissed in December 2005.

¶7 Two months later, in February 2006, I.A. and A.A. were arrested on drug-related charges. DPHHS again removed the children and placed them in foster care, and the

children were adjudicated youths in need of care. In April 2006, the children were relocated from Great Falls to Helena, where they were placed in foster care with relatives.

¶8 The District Court approved a treatment plan, stipulated to by the parents, which set out what they needed to accomplish in order to be reunified with their children. One of the primary goals of the treatment plan was for the parents to address and conquer their drug addictions. Among other things, the plan also required A.A. and I.A. to maintain visitation with their children. If and when it was appropriate, the parents were to increase visitation with the children. Their parenting responsibilities were to be increased until they were reunified with D.A. and M.A.

¶9 Following the approval of the treatment plan, both A.A. and I.A. made improvements in their ability to remain clean and sober. Both completed in-patient drug treatment, attended counseling, and made other lifestyle changes to help them stay sober.

¶10 After the children's third removal from their parents in February 2006, D.A. and M.A.'s foster mother took them to a pediatrician, who found that they exhibited significant developmental delays. The pediatrician believed this was a combination of prenatal exposure to drugs and alcohol, along with trauma experienced while in their parents' care. Both children began an intensive schedule of therapy, and D.A. began attending a special education preschool. The foster parents were devoted to giving the children the necessary care to address their special needs. Their foster mother quit her job so she could provide round-the-clock care.

¶11 A.A. and I.A. engaged in weekly visitation with the children for several months. They interacted well with their children during visits. However, both the foster parents and

3

the children's therapist noted that the children had extremely negative reactions after parental visits, including reversed toilet training, poor speech, tantrums, aggression, and other disruptive behavior. Sometimes these reactions lasted several days. The therapist believed that the parental visits impaired the children's progress. Based on the therapist's recommendation, parental visits were reduced to every other week to allow the children more time to adjust following the visits and to lessen the adverse impact the visits had on them.

¶12 After the children had been in the custody of DPHHS for another 13 months, in March 2007, a permanency hearing for D.A. and M.A. was held as required by § 41-3-445, MCA. At the hearing, DPHHS and the parents advised the District Court that they wished to continue working toward reunification of the parents with their children. DPHHS moved to continue its temporary legal custody (TLC) of the children for another six months. However, the children's attorney opposed the plan for reunification and requested a further hearing on the matter.

¶13 In April 2007, the District Court held an evidentiary hearing on DPHHS's proposed permanency plan which advocated another six months of TLC by DPHHS and eventual reunification. The attorney for the children again argued that more delay and then possible reunification was not in their best interests. The children's pediatrician, therapist, and guardian ad litem all testified against reuniting the children with their parents.

¶14 At the permanency plan hearing, an addiction counselor testified that I.A. and A.A. had made progress, and he believed they were committed to staying sober and getting their children back. Also, a social worker testified that the parents had interacted well with their children during visits. However, she also testified she thought reunification would be

4

difficult and did not offer an opinion as to whether reunification was in the children's best interest.

¶15   On May 15, 2007, the District Court issued an order which rejected DPHHS's proposed permanency plan calling for reunification and denied the motion to continue TLC another six months.  The order included extensive findings of fact which considered the evidence introduced at the permanency plan hearing.  Based on these findings, the District Court concluded that the best interests of D.A. and M.A. would not be served by continuing to reside in foster care for another six months with the mere possibility of someday being reunited with their parents.  The District Court's order recognized that A.A. and I.A. were making progress overcoming their drug addictions, but noted the children's immediate need for a stable and loving home.  The District Court ordered DPHHS to take steps within three months to permanently place the children and suggested that the foster parents would be an appropriate placement.

¶16   DPHHS subsequently filed a motion to terminate A.A. and I.A.'s parental rights.  On August 20, 2007, the District Court held a termination hearing.  The hearing incorporated the evidence from the permanency plan hearing and additional testimony was presented.  Witnesses testified that it would take another year to know if reunification would be possible and, if so, to transition D.A. and M.A. to their parents' care.  The District Court issued an order on October 9, 2007, terminating A.A. and I.A.'s parental rights.  They filed a timely appeal.

**STANDARD OF REVIEW**

¶17 We review a district court's decision to terminate parental rights for abuse of discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, ¶ 16, 168 P.3d 691, ¶ 16. We review the findings of fact to determine if they are clearly erroneous and the conclusions of law to determine if they are correct. *In re D.B.*, ¶ 18. A factual finding is clearly erroneous "if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence underlying the finding, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made." *In re D.F.*, 2007 MT 147, ¶ 21, 337 Mont. 461, ¶ 21, 161 P.3d 825, ¶ 21 (citation omitted).

¶18 The right to parent a child is a fundamental liberty interest, and it must be protected by fundamentally fair procedures. *In re D.B.*, ¶ 17.

## DISCUSSION

### Issue 1

¶19 **Did the District Court err in terminating the parental rights of A.A. and I.A.?**

¶20 A district court may terminate parental rights if the child is adjudicated a youth in need of care and it finds that two conditions are met: "(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f), MCA. The State must present evidence to meet each of the statutory criteria in § 41-3-609(1)(f), MCA, and the District Court must make specific factual findings on each requirement. *In re D.B.*, ¶¶ 26, 29.

¶21 In deciding whether to terminate a parent-child relationship, a district court must give primary consideration to the physical, mental, and emotional conditions and needs of the

6

children. Thus, "'the best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights.'" *In re E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, ¶ 33, 37 P.3d 690, ¶ 33 (quoting *In re J.W.*, 2001 MT 86, ¶ 8, 305 Mont. 149, ¶ 8, 23 P.3d 916, ¶ 8). A child's need for a permanent placement in a stable, loving home supercedes the right to parent a child. *In re A.T.*, 2006 MT 35, ¶ 20, 331 Mont. 155, ¶ 20, 130 P.3d 1249, ¶ 20. If a child is in foster care for 15 of the most recent 22 months, termination of parental rights is presumed to be in the best interests of the child. Section 41-3-604(1), MCA.

¶22 Complete compliance by the parents with a treatment plan is required; partial or even substantial compliance is insufficient under § 41-3-609(1)(f)(i), MCA. *In re D.V.*, 2003 MT 160, ¶ 27, 316 Mont. 282, ¶ 27, 70 P.3d 1253, ¶ 27. As we have previously stated, "[w]ell-intentioned efforts toward successful completion of a treatment plan do not demonstrate either the completion or the success of the plan." *In re J.W.*, ¶ 17 (citation omitted).

¶23 When determining whether parents' conduct is unlikely to change in a reasonable time, a district court

> shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following: . . .
>     . . . .
> (c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child . . . .

Section 41-3-609(2), MCA. Courts should also examine the past and present conduct of the parent. Because district courts "do not have a crystal ball to look into to make this

determination . . . it must, to some extent, be based on a person's past conduct." *In re E.K.*, ¶ 47 (internal quotation omitted).

¶24 The parents do not dispute that the children were adjudicated youths in need of care or that there was an appropriate treatment plan in place. The parents argue that the District Court did not have substantial evidence to support its findings that they had not successfully completed their treatment plans and that their conduct was unlikely to change in a reasonable time. They argue the evidence showed that reunification with the parents was in the best interests of the children. We disagree.

¶25 Substantial evidence presented at the permanency hearing and at the termination hearing supports the District Court's finding that A.A. and I.A. had not fully completed their treatment plans. The evidence was undisputed that A.A. and I.A. had made progress in becoming and staying sober, and they had completed several of the other tasks set forth in the treatment plan. However, the evidence that they had not taken over parenting responsibilities and were not ready to do so was also undisputed. In addition, visits with D.A. and M.A. actually decreased in frequency due to the reactions of the children following the visits. There was evidence that it might well be another year before the treatment plan would be completed and that, given the high level of care the children require, even more time could be required. Thus, at the time of the termination hearing, A.A. and I.A. had demonstrated some success in accomplishing the goals of their treatment plan, but they had not yet completed the plan, and it was unclear whether or when they could complete it. Their progress was not sufficient under § 41-3-609(1)(f)(i), MCA, to demonstrate that they successfully completed their treatment plans. *In re D.V.*, ¶ 27. We conclude, therefore, that

8

the District Court's finding in that regard was supported by substantial evidence and not otherwise clearly erroneous.

¶26    The District Court also found as a matter of fact that the conditions rendering the parents unfit were unlikely to change in a reasonable time, based primarily on the parents' past use of drugs and the effect their use had on their ability to care for their children.  The record supports this finding and is not otherwise clearly erroneous.  Under § 41-3-609(2), MCA, the parents' past drug use is a legitimate consideration for the Court.  The District Court was also justified in considering the parents' past behavior in determining whether they would become fit parents in the future.  *In re E.K.*, ¶ 47.  The District Court's remark after the permanency hearing, that the children need a stable home and should not have to "adjust their timelines and subordinate their needs to meet the timelines of their parents" represents a correct statement of the law because the children's need for a stable home is paramount.  *In re A.T.*, ¶ 20.

¶27    The District Court made adequate findings of fact which are not clearly erroneous.  Based on this record, we hold the parents have failed to establish that the District Court abused its discretion in terminating their parental rights.

**Issue 2**

¶28    **Did the District Court erroneously terminate A.A. and I.A.'s parental rights based solely on the presumption that when a child has been in foster care in custody of the state for 15 of the most recent 22 months, the best interests of the child will be served by termination of parental rights?**

9

¶29   A.A. and I.A. argue the District Court terminated their parental rights based only on the requirement that "[i]f a child has been in foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Section 41-3-604(1), MCA. In this case, D.A. and M.A. had been in foster care at least 17 of the most recent 22 months by the time of the permanency hearing and at the termination hearing. Thus, the statutory presumption applied.

¶30   The statutory presumption alone is an insufficient basis on which to terminate parental rights. *In re D.B.*, ¶ 40. The party seeking termination must still meet the clear and convincing burden of proof, as well as the substantive statutory requirements of § 41-3-609, MCA. *In re B.H.*, 2001 MT 288, ¶ 29, 307 Mont. 412, ¶ 29, 37 P.3d 736, ¶ 29.

¶31   Because the children had been in foster care over 17 months at the time of the termination hearing, the District Court did not err in considering the presumption that termination of parental rights was in their best interest. *See In re D.B.*, ¶¶ 39-40. Yet, the presumption was not the only basis for the District Court's decision. As discussed above, the District Court also made findings, supported by clear and convincing evidence, that the parents had not completed their parenting plan and the conduct rendering them unfit was unlikely to change in a reasonable time. Because the District Court correctly determined that DPHHS had presented sufficient evidence to meet all of the statutory criteria for termination, it did not err by applying the presumption that termination was in D.A. and M.A.'s best interest.

**Issue 3**
10

**¶32 Did the District Court commit plain error that violated the parents' due process rights when it ordered DPHHS to take steps to permanently place the children following the permanency hearing?**

¶33 A.A. and I.A. concede they did not raise this issue before the District Court. This Court will generally not review an issue raised for the first time on appeal. *State v. Adgerson*, 2003 MT 284, ¶ 12, 318 Mont. 22, ¶ 12, 78 P.3d 850, ¶ 12. However, if an issue was not raised below, this Court may invoke the plain error doctrine to enable review in those limited situations where the failure to review the claimed error may result in a manifest miscarriage of justice or compromise the integrity of the judicial process. *In re S.C.*, 2005 MT 241, ¶ 35, 328 Mont. 476, ¶ 35, 121 P.3d 552, ¶ 35.

¶34 A.A. and I.A. argue the District Court committed plain error by violating their due process rights to a fundamentally fair hearing. *See In re B.N.Y.*, 2003 MT 241, ¶ 21, 317 Mont. 291, ¶ 21, 77 P.3d 189, ¶ 21. The District Court's order stated, in part:

> 2. The Court finds DPHHS's permanency plan for reunification of D.A. and M.A. with their biological parents is not in their best interests.
> 3. DPHHS's legal custody of D.A. and M.A. is continued for three months, and DPHHS is ORDERED to take steps to have the children permanently placed within that time. In determining how to permanently place the children, DPHHS should be aware that the Court believes the foster parents . . . can provide a safe and stable home for the boys and can meet their special needs.

A.A. and I.A. argue that this order required DPHHS to file a petition for termination of their parental rights and thus rendered the termination hearing meaningless because the District Court had already made a decision as to the result of the hearing.

11

¶35 In a child abuse and neglect proceeding, a district court is required to hold a permanency hearing "no later than 12 months after the initial court finding that the child has been subjected to abuse or neglect or 12 months after the child's first 60 days of removal from the home, whichever comes first." Section 41-3-445(1)(a)(i)(B), MCA. Following the hearing, the district court must make written findings on the permanency plan, including whether the proposed permanency plan is in the best interests of the child. Section 41-3-445(6), MCA. A district court also has discretion to enter "any other order that it determines to be in the best interests of the child." Section 41-3-445(7), MCA.

¶36 Section 41-3-445(6), MCA, required the District Court to enter written findings as to whether DPHHS's proposed permanency plan for reunification was in the best interests of D.A. and M.A. This is what the District Court's May 15, 2007, order did. After making findings of fact regarding the extensive testimony and evidence the District Court heard at the permanency hearing, the District Court concluded that the permanency plan presented by DPHHS, which advocated reunification after another six months of temporary custody, was not in the children's best interest. There is no plain error in the District Court issuing findings required by statute, and, as discussed above, there is sufficient evidence in the record to support the District Court's findings.

¶37 The District Court's order was in accord with § 41-3-445(6), MCA, which requires a specific permanency plan. Having appropriately rejected the plan proposed by DPHHS, which would have continued foster care placement for a significant time, the District Court had the authority to order DPHHS to take specific steps to effectuate an alternate plan. Section 41-3-445(6)(c), MCA. The ordered plan could include adoption of the children.

12

Section 41-3-445(8)(c), MCA. This order did not require a particular outcome or demonstrate any bias towards the parents. The order did not terminate the treatment plan, and it remained possible to complete it, albeit in a shortened time frame. The District Court properly exercised its discretion under § 41-3-445(7), MCA, by entering an order that would advance the best interests of D.A. and M.A. as they appeared at that time. The District Court did not commit plain error and violate the parents' due process rights in its order following the permanency plan hearing.

## CONCLUSION

¶38 The District Court did not abuse its discretion when it terminated the parental rights of A.A. and I.A. to their children, D.A. and M.A. The District Court's findings of fact that DPHHS had proven all the requirements for termination by clear and convincing evidence are not clearly erroneous, and the District Court correctly applied the applicable law.

¶39 The District Court did not rely solely on the statutory presumption that because the children had been in foster care over 15 of the most recent 22 months at the time of the termination hearing, termination of parental rights was in their best interest.

¶40 The District Court did not commit plain error in its order following the permanency hearing.

¶41 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

13

/S/ BRIAN MORRIS