

DA 09-0362

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2010 MT 31N

IN THE MATTER OF:

J.N.C.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DN 06-20
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kathleen Foley; Boggs & Foley Law Office, Missoula, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  January 20, 2010

Decided:  February 9, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Birth mother A.M. appeals from an order of the Twenty-First Judicial District Court, Ravalli County, terminating her parental rights to 15-year-old son, J.N.C. We affirm.

¶3 A.M. raises the following issues on appeal:

¶4 Whether the District Court's finding that A.M. was not capable of change within a reasonable time was supported by clear and convincing evidence.

¶5 Whether the District Court erred by not appointing a separate guardian ad litem for J.N.C. after appointing separate counsel for the youth due to a conflict of interest.

¶6 Whether the District Court's finding that termination of A.M.'s parental rights is in J.N.C.'s best interests was supported by clear and convincing evidence.

¶7 Whether a de facto termination of A.M.'s parental rights occurred prior to the termination hearing when the social worker stopped efforts to assist A.M. in accessing services required by her treatment plan.

2

¶8 On November 21, 2006, the Montana Department of Public Health and Human Services (Department) filed a petition requesting emergency protective services, adjudication as youths in need of care, and temporary legal custody of J.N.C., then 13 years old, as well as his two younger half-sisters; this petition followed the arrest and incarceration of their father and the mother of his half-sisters. J.N.C.'s birth mother, A.M., was living in Spokane, Washington, when the Department intervened. J.N.C. had been living with his father since 2001, following a Washington superior court order constraining A.M.'s parental rights due to willful abandonment, child abuse, domestic violence, neglect of parenting functions, long-term parental impairment by substance abuse, and absence or impairment of emotional ties between mother and child. The Washington court limited A.M.'s visitation with J.N.C. to two hours a week under supervision.

¶9 On March 8, 2007, the District Court adjudicated J.N.C. as a youth in need of care and granted temporary legal custody to the Department. A.M. acquiesced in the Department's petition and did not contest the adjudication. On May 17, 2007, the court approved a treatment plan for A.M. On November 10, 2008, the Department filed a petition for termination of parental rights and permanent legal custody of J.N.C. The court held hearings on the petition on March 9, 2009, April 17, 2009, and May 4, 2009. On May 22, 2009, the District Court issued its findings of fact, conclusions of law, and order terminating A.M.'s parental rights. A.M. now appeals the termination of her parental rights.

¶10 This Court reviews a district court's decision to terminate parental rights for abuse of discretion. *Matter of D.B. & D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. In reviewing for abuse of discretion, we consider "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *Matter of D.B.*, ¶ 16. Before terminating parental rights, a district court must make specific factual findings addressing applicable statutory requirements. *Matter of D.B.*, ¶¶ 17-18. We review these findings of fact to determine whether they are clearly erroneous and conclusions of law to determine whether they are correct. *Matter of D.B.*, ¶ 18.

¶11 *Whether the District Court's finding that A.M. was not capable of change within a reasonable time was supported by clear and convincing evidence.*

¶12 Montana law provides that a court may terminate parental rights upon clear and convincing evidence that (1) the child has been adjudicated a youth in need of care, (2) an appropriate court-approved treatment plan has not been complied with or has not been successful, and (3) the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.

¶13 J.N.C. was adjudicated a youth in need of care and A.M. conceded that she had not completed her treatment plan. A.M. argues that the Department has not proven by clear and convincing evidence that the conduct or condition rendering her unfit was not likely to change within a reasonable period of time. A.M. argues that the court essentially collapsed two requirements of § 41-3-609(1)(f), MCA, by using evidence of her

4

noncompliance with the treatment plan as evidence of her inability to change within a reasonable time.

¶14 The District Court order meets the statutory requirements. The court found that A.M.'s "conduct and condition that led to the Department's intervention has not been successfully corrected or resolved. This condition includes A.M.'s unresolved chemical dependency, her unstable lifestyle that is unsuited to caring for her child, and the lack of an appropriate parent-child relationship with her child." The court specifically found that "[t]he conduct and condition of A.M. is unlikely to change within a reasonable time, which is evidenced by her failure to make any significant progress on her Treatment Plan." The court further found that "[t]he continuation of the parent-child relationship with A.M. will likely result in continued abuse or neglect" and that "[t]he conduct or condition of A.M. renders her unfit, unable or unwilling to give her child adequate parental care."

¶15 The court looked to more than A.M.'s noncompliance with her treatment plan as evidence that the conduct rendering her unfit to parent was unlikely to change within a reasonable time. The court supported this finding by noting A.M.'s inability to provide a nurturing and healthy living environment for J.N.C., her ongoing chemical dependency, and her unfamiliarity with J.N.C.'s disorders, including reactive-attachment disorder, significant learning disabilities, and cognitive problems. A.M. counters that she completed treatment and was staying clean. However, A.M.'s background of long-term drug use, criminal activities, and homelessness, together with her failed attempts at treatment and ongoing substance abuse, is set out at length in the social worker's report to

5

the court. Although the court did list some positive changes A.M. has made to improve the stability of her life, a parent's past behavior is considered in determining fitness to parent in the future. *Matter of A.J.E., III*, 2006 MT 41, ¶ 27, 331 Mont. 198, 130 P.3d 612. "[E]vidence of rehabilitation does not render a district court powerless to find future danger to the child. . . ." *Matter of A.J.E.*, ¶ 27. The determination of future ability to parent under § 41-3-609(1)(f)(ii), MCA, must be based in part on the parent's past conduct, because it is not otherwise possible to anticipate whether the parent's conduct or condition will change within a reasonable time. *Matter of D.F.*, 2007 MT 147, ¶ 23, 337 Mont. 461, 161 P.3d 825. The issue is not merely whether a parent has made progress or would make some progress in the future; the issue is whether the parent is likely to make enough progress, within a reasonable time, to overcome the circumstances rendering her unfit. *Matter of D.F.*, ¶ 43. A.M. fails to demonstrate that the District Court's findings are clearly erroneous.

¶16 *Whether the District Court erred by not appointing a separate guardian ad litem for J.N.C. after appointing separate counsel for the youth due to a conflict of interest.*

¶17 A.M. contends that the District Court should have appointed another guardian ad litem at the time it appointed separate counsel for J.N.C. due to a conflict of interest between J.N.C. and his half-sisters. However, the record contains no request, by A.M. or anyone else, to appoint a separate guardian ad litem for J.N.C. This Court generally refuses to consider an issue raised for the first time on appeal. *Matter of Custody and Parental Rights of D.A. & M.A.*, 2008 MT 247, ¶ 33, 344 Mont. 513, 189 P.3d 631. Furthermore, given that the focus of the termination hearing was on A.M.'s compliance

6

with her treatment plan, the appointment of a new guardian ad litem for J.N.C. would not have had a significant impact on the result. "[N]o civil case shall be reversed by reason of error which would have no significant impact upon the result. . . ." *Matter of D.B. & D.B.*, 2008 MT 272, ¶ 38, 345 Mont. 225, 190 P.3d 1072. The District Court did not err by not appointing a separate guardian ad litem for J.N.C.

¶18 *Whether the District Court's finding that termination of A.M.'s parental rights is in J.N.C.'s best interests was supported by clear and convincing evidence.*

¶19 A.M. suggests that given J.N.C.'s stated preference to live with his mother, the court lacked clear and convincing evidence that terminating A.M.'s parental rights was in J.N.C.'s best interests. However, the judge discussed his intent to put J.N.C. in the best position, particularly to finish high school, and that when J.N.C. turns 18 years old, he may have whatever contact with his natural parents that he chooses.

¶20 The District Court specifically found that "[t]he actions of A.M. have been contrary to the best interests and welfare of her child." The court's extensive findings indicating that it gave primary consideration to the child's "physical, mental and emotional condition and needs," reflect the statutory definition of the best interests of the child provided at § 41-3-102(5), MCA. The court recited the factual background leading to J.N.C.'s placement at the Bitterroot Youth Home and found that A.M., "while expressing a desire to parent him, has done no work on her Treatment Plan until very recently, and insufficient work recently, nor has she demonstrated the ability to provide J.N.C. with the high level of parental care he needs." The court found that J.N.C.'s current placement is in his best interests because the placement is designed to meet his

individual needs. The court further found that it is in J.N.C.'s best interests for the court to reach a permanent resolution, since permanency is crucial to his health, safety, and well-being. The court cited the report of the guardian ad litem that after two years and multiple placements, J.N.C. required immediate permanency and certainty. The court noted J.N.C.'s desire to live with his mother, but noted that he was "on track to graduate from high school, if he remains in a stable placement setting."

¶21 Furthermore, the District Court concluded that since J.N.C. had been in foster care under the physical custody of the Department for more than 15 of the most recent 22 months, the best interests of J.N.C. must be presumed to be served by termination of the parental rights of his parents, citing § 41-3-604(1), MCA. The court held that terminating the parental rights of A.M. was in the best interests of J.N.C. considering his physical, mental, and emotional conditions and needs. Contrary to A.M.'s suggestion, the District Court considered J.N.C.'s stated desire to live with his mother. The court's findings and conclusions are based upon the statutory definition of the best interests of the child and are supported by clear and convincing evidence. The District Court's findings of fact are not clearly erroneous and its conclusions of law are correct.

¶22 *Whether a de facto termination of A.M.'s parental rights occurred prior to the termination hearing when the social worker stopped efforts to assist A.M. in accessing services required by her treatment plan.*

¶23 A.M. suggests that her treatment plan was not entirely appropriate, that her compliance with the plan was frustrated by poverty and geography, and that the social worker had refused to provide a telephone calling card to J.N.C. so that he could call

A.M. A.M. does not allege or show any error by the court with respect to this claim. A.M. and her counsel stipulated to the appropriateness of her treatment plan, and the record contains no objection to the plan or request for modification at any time during the protracted proceedings. The social worker at the time of the hearing was cross-examined at length concerning the Department's decision to seek termination of A.M.'s parental rights and the Department's efforts to assist A.M. in completing her treatment plan. The social worker stated that she did not stop assisting A.M. with her treatment plan and explained the reasons for refusing J.N.C.'s request for a phone card. A.M. fails to establish any error in the District Court's findings and we conclude that the District Court did not abuse its discretion in terminating her parental rights.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. It is manifest on the face of the briefs and the record that the appeal is without merit because the issues are ones of judicial discretion and there clearly was not an abuse of discretion.

¶25 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS